# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### DOCKET NO. 3:07-cr-00285-W

| | | |
|---|---|---|
| ACCRETIVE COMMERCE. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| KENCO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THE MATTER is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer (Doc. No. 6), as well as Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 15).  The Court allowed limited discovery on the jurisdictional issues, and both motions have been fully briefed by the parties.  Because a favorable ruling on Defendant's motion to dismiss for lack of personal jurisdiction would moot the second motion to dismiss, the Court will address the motions in turn.

## I.  Background

Plaintiff is a Delaware corporation with its principal place of business in Mecklenburg County, North Carolina.  Defendant is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee.  Plaintiff describes itself as a mid-size business process outsourcer that provides logistics services to retail businesses that sell products directly to customers through catalogues and internet web stores.  Plaintiff operates five distribution centers, each of which are located in various parts of the United States.  These distribution centers are used by Plaintiff to

receive and store clients' products, as well as for processing orders and shipping products directly to the consumer.

On January 1, 2002, Plaintiff's subsidiary and Defendant entered into a Distribution Center Lease, which set forth the terms of the lease of a warehouse facility in Chattanooga, Tennessee, that Plaintiff used as a distribution center ("Premises"). On July 30, 2004, Plaintiff and Defendant entered into a First Amendment to Lease Agreement ("Lease Agreement"), wherein Plaintiff replaced its subsidiary as tenant and agreed to extend the term of the lease for ten years.

Beginning in June 2005, Defendant allegedly began hiring away Plaintiff's key management employees. Defendant subsequently entered into the direct-to-customer business in competition with Plaintiff. As a result, Defendant obtained an account with one of Plaintiff's customers for which Plaintiff distributed products from the Premises. Plaintiff subsequently informed Defendant by letter dated June 14, 2007, pursuant to Section 20.3 of the Lease, that it was terminating the Lease Agreement effective June 30, 2007. On June 15, 2007, Plaintiff instituted this suit alleging that Defendant's conduct of hiring away Plaintiff's key management employees and using these former employees to obtain business from Plaintiff's customers materially disrupted Plaintiff's ability to use the leased Premises. Defendant responded with a motion to dismiss the lawsuit for lack of personal jurisdiction, or in the alternative, to transfer the case to the Eastern District of Tennessee. Defendant also filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II. Personal Jurisdiction and Transfer of Venue

### A. Motion to Dismiss

Turning to the first motion, Defendant contends this Court lacks personal jurisdiction because the Complaint has no connection with Defendant's limited North Carolina operations, and those operations fall short of the threshold due process requires for the exercise of general jurisdiction. Plaintiff argues that Defendant's continuous and systematic general business contacts with North Carolina are sufficient to require it to defend a lawsuit here.

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Laboratories, Inc. v. Akzo, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307 (4th Cir. 1986); 2A James W. Moore, Moore's Federal Practice ¶ 12.07[2.-2] (1985 & Supp.1992-93)). When the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. Combs, 886 F.2d at 676; see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993). The court construes all relevant jurisdictional allegations in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. Id.

For the Court to assert personal jurisdiction, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Christian Science Bd. of Directors of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th

Cir.2001). North Carolina's long-arm statute is construed to reach the limits of constitutional due process. Id. Because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4 ] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993) (citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). Thus, the inquiry turns to whether haling Defendant before this Court violates due process.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)) (citations omitted). "A forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' [its] activities toward forum residents. A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

"Determining the extent of a State's judicial power over persons outside of its borders under the International Shoe standard can be undertaken through two different approaches-by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir.2002) (citations omitted). The parties agree that specific jurisdiction is inapplicable in this case because Defendant's contacts

with the forum state are not the basis of suit.[1]  As such, general jurisdiction may "arise from the

defendant's general, more persistent, but unrelated contacts with the State."  Id.

> The assertion of general jurisdiction comports with due process when two criteria are
> met. First, there must be "continuous and systematic general business contacts"
> between the foreign defendant and the forum. Helicopteros Nacionales de Colombia,
> S.A. v. Hall, 466 U.S. 408, 416 (1984).  Second, the plaintiff must show that the
> exercise of jurisdiction would be reasonable. See Donatelli v. Nat'l Hockey League,
> 893 F.2d 459, 465 (1st Cir.1990) (discussing the five "gestalt factors" used to
> determine fundamental fairness of exercising jurisdiction).

U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001). The standard for general

jurisdiction is more demanding than the one used to establish specific jurisdiction. ALS Scan, Inc.,

293 F.3d at 712 (citing Helicopteros, 466 U.S. at 414-16).

Here, Defendant admittedly provides services in warehouse facilities for four customers in

five locations throughout North Carolina.  Defendant, however, argues its business in North Carolina

is "easily-terminable work for four customers" and that this limited connection with the state is

insufficient to force it to litigate unrelated claims in this jurisdiction.  To the contrary, Plaintiff has

presented argument and evidence to this Court indicating that Defendant's connections with the state

are more substantial than it attempts to portray.  Defendant has reported North Carolina sales of more

than $11 million in each of the last four years for its North Carolina customers and has a total

revenue of $15 million for North Carolina operations during the first eight months of 2007.  In

addition to it current customers, Defendant has solicited business throughout the state of North

Carolina for at least the past five years.  Defendant currently employs 316 people in North Carolina,

---

[1]Personal jurisdiction can be either general or specific.  Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408, 414 n. 9 (1984).  Specific jurisdiction can be found "[w]hen a controversy is related to or 'arises out
of' a defendant's contacts with the forum. . . ." Id. at 414 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).
Plaintiff does not contend, nor do the facts support such a finding, that specific jurisdiction exists in this case.  See
ALS Scan, Inc.., 293 F.3d at 712 (noting that if the defendant's contacts with the state are the basis for the suit,
specific jurisdiction may exist).

including management personnel and hourly workers. Its payroll for these employees for the last four years has averaged more than $8 million. Furthermore, Defendant holds itself out as engaged in substantial gainful activity in North Carolina through representations on its web site, which provides, "We provide logistics solutions for many customers serving a variety of industries including pharmaceuticals, raw materials, and appliances in the following cities: Durham; Raleigh; Zebulon; [and] Charlotte." http://www.kencogroup.com/www/docs/162/north_carolina.

The record before the Court demonstrates that Defendant has a significant business presence in North Carolina, as evident by its business contacts and operations, solicitation of customers, revenue generation, and employees within this state. Under these facts, the Court finds that Defendant engages in "continuous, systematic, and substantial connections" with North Carolina such that this Court's exercise of general jurisdiction over Defendant is proper. The inquiry, however, does not end there.

In analyzing whether a court's exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice," Int'l Shoe Co., 326 U.S. at 316, the Court must consider whether the exercise of jurisdiction is constitutionally reasonable. Christian Science Bd. of Directors of the First Church of Christ, 259 F.3d at 216; see also U.S. v. Swiss American Bank, Ltd., 274 F.3d at 619. "In determining whether jurisdiction is constitutionally reasonable, [the Court] may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolutions of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" Christian Science Bd. of Directors of the First Church of Christ, 259 F.3d at 217 (quoting Burger King, 471 U.S. at 477). The Court has reviewed these

factors and finds it is fair and reasonable to require Defendant to litigate here. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is denied.

## B. Motion to Transfer Venue

Because the motion to dismiss is denied, the Court now turns to Defendant's alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." To prevail under 28 U.S.C. §1404(a), Defendant carries a heavy burden of not only showing that the case could have originally been brought in the transferee forum, but also in showing that a balancing test analyzing the convenience of the parties and witnesses, as well as the interest of justice, clearly favors transferring the case. "Unless the balance is tipped strongly in favor of the moving party, plaintiff's choice of forum should not be disturbed." Atari v. McNeal, 159 F. Supp. 2d 224, 227 (W.D.N.C. 2000). Ultimately, the question of transfer under section 1404(a) is committed to the sound discretion of this Court. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988); Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir.1991).

"Before considering the convenience of the parties and the interests of justice, a court ordinarily must consider whether venue is proper in the transferor forum and whether the transferee forum is a district in which the action could have been brought." Commercial Equipment Co., Inc., v. Barclay Furniture Co., 738 F. Supp. 974, 977 (W.D.N.C. 1990) (citing Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 450 (W.D.N.C.1989)). Here, Defendant moves the Court to transfer this case pursuant to to the Eastern District of Tennessee. The parties essentially concede this case could have been brought there. Defendant is a Tennessee corporation

with its principle place of business located in Chattanooga, Tennessee. Furthermore, venue is appropriate in the Eastern District of Tennessee under 28 U.S.C. § 1391(a) because a substantial part, if not all, of the alleged events giving rise to Plaintiff's claims occurred in the district.

In evaluating the second and third prongs of an analysis under §1404(a) (whether transfer is for the convenience of the parties and witnesses and whether transfer is in the interest of justice), the Court must consider eleven factors: (1) the plaintiff's choice of forum; (2) the residence of the parties; (3) access to evidence; (4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses; (5) the possibility of a view by the jury; (6) the enforceability of a judgment; (7) the relative advantages and obstacles to a fair trial; (8) practical issues affecting trial expediency and efficiency; (9) the relative court congestion between the districts; (10) the interest in resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of conflict of laws. Nutrition & Fitness, Inc., v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 362 (W.D.N.C. 2003) (citation omitted).

Factor one gives deference to Plaintiff's choice of forum and obviously favors against transfer of the suit. This Court long has recognized that in considering a motion to transfer pursuant to section 1404(a), a court ordinarily should accord the plaintiff''s choice of forum great weight. Commercial Equipment Co., Inc., 738 F. Supp. at 976(citing Datasouth Computer Corp., 719 F. Supp. at 451 (W.D.N.C.1989); Phillips v. S. Gumpert Co., 627 F. Supp. 725, 727 (W.D.N.C.1986);Western Steer-Mom 'N' Pop's, Inc. v. FMT Investments, Inc., 578 F. Supp. 260, 265 (W.D.N.C.1984)). Moreover, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly

-8-

disturbed." Datasouth, 719 F. Supp. at 451 (citations omitted). Factor two, the residence of the parties, is equally weighted in that Plaintiff resides here and Defendant resides in Tennessee. Thus, one party will always be required to travel. As such, the Court accords this factor no weight. The third factor, access to evidence, weighs slightly in favor of transfer. Each party likely retains the relevant documents in their home office, which, as stated above, initially indicates this factor should be equally weighted. Defendant, however, argues that many of the witnesses live in Chattanooga, thus tipping the scare in its favor. A party cannot show that transfer is necessary merely by the number of witnesses listed. See 15 Wright & Miller, Federal Practice and Procedure 3d § 3851, at 221 ("The courts have also been careful not to let a motion for transfer become a 'battle of numbers.'"). Nonetheless, the bulk of Defendant's employees who were allegedly hired away from Plaintiff (and whose testimony is central to the claims and defenses at bar) reside in Tennessee. Accordingly, this factor slightly favors transfer. For the same reasons, factor four (availability of witnesses and process) also favors transfer. This factor is afforded little importance, however, because the compulsory process appears to be insignificant under these facts, particularly in light of the fact many of the witness are the parties' employees. Turning to factor five, notwithstanding Defendant's arguments to the contrary, the Court finds that the possibility that the jury will need to conduct a view of the premises is unlikely. As such, this factor does not weigh in favor of transfer, but is instead neutral. Next, factor six, the enforceability of a judgment, appears to slightly favor Defendant's position because it owns property in Tennessee and not in North Carolina. Plaintiff, however, has not argued that it believes a judgment would be difficult to enforce. Thus, this factor carries little weight in the Court's analysis. Factor seven requires a consideration of the relative advantages and obstacles to a fair trial. Defendant contends it will have to use deposition testimony

rather than live testimony because of its inability to compel the attendance of Tennessee non-party witnesses. Plaintiff, on the other hand, argues these non-party witnesses provide little to no relevant testimony. Considering these arguments collectively and without deciding the relevance of the witnesses' testimony, the Court finds that this factor slightly tips in favor of transfer. Factor eight considers the practical issues regarding an easy, expeditious, and inexpensive trial. As mentioned above, at least one party and their party witnesses will have to travel no matter where the trial is conducted, thus making the relative burden and expense equal. The Court has already ruled that personal jurisdiction exists in North Carolina, and neither Plaintiff nor Defendant has argued that trial in either venue would be biased against any party. The Court cannot identify any practical problems to trial, and therefore finds this factor to favor neither Plaintiff nor Defendant. Turning to factor nine (the relative court congestion between the districts), the Judicial Caseload Profile Report indicates that the Western District of North Carolina is less congested than the Eastern District of Tennessee. Moreover, it is this Court's policy to encourage speedy resolution of civil cases. In fact, this Court's internal policy requires standard civil cases to proceed to trial within one year of the filing of the complaint. (See 3:07-mc-47; Doc. No. 2). Because this is significantly less time than the average time for a case to proceed to trial in the Eastern District of Tennessee (26.5 months for the year 2006), this factor favors retention of the case in the Western District of North Carolina. Factor ten considers the interest in resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action. Here, Defendant argues Tennessee law governs the contract claims due to a choice of law provision within the Lease Agreement. Tennessee law also controls the tort claims under the doctrine of *lex loci delicti*. Since Plaintiff has not argued to the contrary, the Court will

presume (without deciding at this juncture) that Tennessee law controls. This factor therefore favors transfer, although this Court is certainly capable of applying Tennessee law to the straightforward claims in this case. See Schwartz v. R.H. Macy's, Inc., 791 F. Supp. 94, 95 (S.D.N.Y.1992) (analyzing section 1404(a) and noting that issues associated with the convenience of parties and witnesses are more significant than issues of applying another jurisdiction's laws, particularly where the legal issues are not complex). Neither party argues that the last factor (the avoidance of conflict of laws) supports transfer, and this Court finds it to be neutral.

In summary, only five factors (three, four, six, seven, and ten) favor Defendant's position—albeit slightly— that adjudication of this matter should take place in Tennessee. On the other hand, two factors (one and nine) are strongly favorable to Plaintiff. Four factors (two, five, eight, and eleven) did not tip the balance in favor of either party. Despite the fact that five factors favor transfer, the Court is more concerned with the qualitative nature of the factors. Accordingly, after balancing the requisite factors, the Court is not convinced the "balance is tipped *strongly* in favor of the moving party." Atari, 159 F. Supp. 2d at 227 (emphasis added). Defendant has not satisfied its heavy burden, and the Court concludes that the interests of justice and convenience warrant retaining the venue in the forum of Plaintiff's choice. Consequently, Defendant's alternative Motion to Transfer Venue is denied.

### III. Failure to State Claim for Relief

In addition to its motion to dismiss for lack of personal jurisdiction and motion to transfer, Defendant also filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is intended to test the legal sufficiency of the complaint, not to decide the merits of the action. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991). The Supreme Court recently explained the applicable standard when reviewing a motion to dismiss pursuant to Rule 12(b)(6). In order to survive the motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. A motion to dismiss will be denied if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). The Court, however, "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 318 (4th Cir. 2006) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

Since this is a diversity case, the Court is also tasked with deciding the applicable law to apply to Plaintiff's claims. The Lease Agreement specifically provides in section 23.7 that it is to be governed by "the laws of the state in which the Land is located," which is Tennessee. Neither party has objected to the validity of the choice of law provision, and the Court sees no reason to disregard it. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 601 (4th

Cir. 2004) (noting that, in diversity cases, courts generally enforce choice of law provisions to govern contract disputes). With respect to the tort claims at bar, North Carolina law follows the majority rule in the United States, which provides that matters affecting the substantive rights of the parties are determined by *lex loci deliciti*, the law of the situs of the claim. Boudreau v. Baughman, 368 S.E.2d 849, 853-54 (N.C. 1988) (citing Charnock v. Taylor, 26 S.E.2d 911 (N.C. 1943)). Therefore, Tennessee law governs both the contract and tort claims in this matter.

Plaintiff's Complaint sets forth nine claims against Defendant: (1) breach of contract, (2) breach of implied covenant of quiet enjoyment, (3) tortious interference with business relations, (4) breach of the obligation of good faith and fair dealing, (5) fraudulent misrepresentation, (6) negligent misrepresentation; (7) declaratory judgment; (8) indemnification of losses, and (9) payment of attorneys' fees. Defendant has moved to dismiss each of these claims.

A.      Breach of Contract

Plaintiff's first cause of action alleges Defendant breached the contractual obligation of quiet enjoyment as contained in the Lease Agreement, which caused Plaintiff to lose a major customer. In order to set forth a *prima facie* case for its breach of contract claim, Plaintiff must be able to show: (1) the existence of an enforceable contract, (2) non-performance of the contract amounting to a breach of that contract, and (3) damages flowing from the defendant's nonperformance. Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App.2006).

There is no doubt Plaintiff and Defendant entered into an enforceable contract, which included an express covenant of quiet enjoyment. The Lease Agreement provides:

18. Quiet Enjoyment.  Subject to the provisions of the Lease, so long as Tenant pays all of the Rent and performs all of its other obligations hereunder, neither Landlord nor any person lawfully claiming through or under Landlord shall disturb Tenant's possession, use and occupancy of the Premises.

Plaintiff alleges that Defendant breached this provision of the contract by hiring away numerous key employees from Plaintiff who then made it possible for Defendant to enter into competition with Plaintiff.  According to Plaintiff, this conduct forced it to vacate the Premises and terminate the Lease Agreement.  Defendant argues its alleged conduct, construed in the light most favorable to Plaintiff, fails to constitute a breach of the quiet enjoyment provision in the Lease Agreement.

The central issue is whether Plaintiff's Complaint sufficiently alleges that Defendant's conduct interferes with Plaintiff's "possession, use and occupancy" of the Premises.  Case law and relevant authority are helpful to guide the Court in interpreting the terms "use," "possession," and "occupancy" in the Lease Agreement.  A covenant of quiet enjoyment means "that the lessee will be protected by the lessor from any interference with his possession by one claiming a paramount title or any acts of the lessor which will destroy the quiet and beneficial enjoyment of the use of the property."  W.E. Stephens Mfg. Co., Inc., v. Buntin, 181 S.W.2d 634, 636 (Tenn. Ct. App. 1944).  "The covenant of quiet enjoyment is breached when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold."  49 Am. Jur. 2d Landlord and Tenant § 481 (2007) (citations omitted).  Furthermore, "The covenant of quiet enjoyment is breached by any disturbance of the tenant's possession by the landlord that renders the premises unfit for occupancy for the purposes for which they were leased, or which deprives the tenant of the beneficial enjoyment of the premises."  Id.

Here, the Lease Agreement, in Section 6.1, provides that Plaintiff "may use the Premises only for warehousing and distribution and associated office use." The lone fact that Plaintiff no longer services its key customer from the Premises does not foreclose the possibility that the Premises is in usable condition. The Complaint makes no allegation that Plaintiff is unable to use the Premises to conduct its business for existing and future customers. Indeed, the Complaint acknowledges that Defendant hired "most" but not all of its key management who had been employed at the Premises. (Complaint, ¶ 27). With some management still in place, Plaintiff was obviously able to seek out and retain other clients, thereby allowing it to "use" the Premises for warehousing and distribution as contemplated under the Lease Agreement. Likewise, the Complaint fails to sufficiently allege that Defendant deprived Plaintiff of the ability to "possess" or "occupy" the Premises. Instead, Plaintiff's allegations essentially assert a claim for breach of a covenant not to compete. Such covenant does not appear in the Lease Agreement, and the Court will not imply such a covenant through a broad interpretation of the contract terms. Accordingly, because the Complaint has not sufficiently alleged a breach of the contract, this cause of action is dismissed.

B       Breach of Implied Covenant of Quiet Enjoyment

For the reasons stated above, Plaintiff's claim for breach of implied covenant of quiet enjoyment also fails. It is, therefore, dismissed.

C.      Tortious Interference with Business Relations

Defendant argues Plaintiff has not alleged improper interference with its business relations, thus requiring dismissal of the third cause of action. In order to state a cause of action for tortious interference with business relations under Tennessee law, Plaintiff must allege

-15-

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means* . . . ; and finally, (5) damages resulting from the tortious interference.

Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (citations omitted) (emphasis in original). Defendant has not challenged four of the essential elements (one, two, three, and five). Furthermore, a review of the Complaint reveals these elements have been sufficiently pleaded. Plaintiff alleges that Defendant knew of Plaintiff's business relationships with its employees and clients. Additionally, Defendant allegedly intended to cause the termination of these relationships. Specifically, Defendant hired key employees from Plaintiff and used these employees' knowledge of Plaintiff's business to secure business from Plaintiff's clients. Plaintiff contends that this improper interference with its existing business relationships caused economic harm to Plaintiff.

Defendant contends the Complaint does not sufficiently allege improper motive, and therefore does not satisfy the fourth element. The plain language of element four and its use of the disjunctive "or" indicates that an "improper motive" need not be shown if Plaintiff alleges Defendant employed "improper means." Improper means may include "fraud, misrepresentation, or deceit;" "misuse of inside or confidential information;" "methods that violate an established standard of a trade or profession;" or "methods that involve other unethical conduct." Id.

Without delving into the merits of the allegations, the Court finds that the Complaint alleges a number of "improper means" by which Defendant interfered with Plaintiff's business relationships. The Complaint asserts a cause of action for fraud, which, as explained below, is sufficiently pleaded to survive the motion to dismiss. Plaintiff has also alleged that Defendant obtained and used

confidential information to lure away one of its largest customers. Furthermore, Plaintiff contends the allegations collectively demonstrate unethical conduct by Defendant. While the veracity of these allegations will be proven by the evidence throughout the course of litigation, the Court concludes at this stage that a cause of action for tortious interference with business relations is plausible.

D.     Breach of the Obligation of Good Faith and Fair Dealing

Defendant argues that because Plaintiff's claim for breach of covenant of quiet enjoyment should be dismissed, Plaintiff's fourth claim for breach of the obligation of good faith and fair dealing should also be dismissed. In Tennessee, the covenant of good faith and fair dealing is implied in every contract. Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684 (Tenn. 1996). In evaluating the nature of the duty of good faith, Tennessee law provides:

> It is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law. See Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable.

Id. at 686 (quoting TSC Industries, Inc. v. Tomlin, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)); see also Covington v. Robinson, 723 S.W.2d 643, 645 (Tenn. Ct. App.1986) (noting that Court must look to language of the contract to determine what is fair and reasonable with respect to the intention of the parties).

Here, the Court has already determined that Plaintiff has not sufficiently alleged a breach of contract with respect to the express covenant of quiet enjoyment. In ascertaining the parties' intent, however, the Court must consider the Lease Agreement as a whole, not just one provision in isolation. In support of its allegations for breach of the duty of good faith and fair dealing, Plaintiff

cites Defendant's conduct of hiring away key employees, failing to stop hiring away key employees after being promised by Defendant's executive officer that it would do so, using Plaintiff's former employees to target Plaintiff's key customer, and falsely informing Plaintiff's customers that Plaintiff intended to shut down its operations at the Premises even though Plaintiff had not yet given indication of such intent. The gravamen of Plaintiff's allegations regarding its claim for breach of duty of good faith and fair dealing concern activities outside the realm of the Lease Agreement. The Lease Agreement neither identifies Plaintiff's customers nor imposes any restrictions on Defendant for entering a competing business. The only reference to Plaintiff's business in the Lease Agreement is a vague provision concerning the "Use of Premises" (Sec. 6.1). As noted earlier, Section 6.1 provides that Plaintiff shall use the Premises "only for warehousing and distribution and associated office use." No further explanation or specifics of Plaintiff's business operations are mentioned in the Lease Agreement.

"[T]he breach of the covenant of good faith and fair dealing claim is grounded in contract law." Savers Federal Sav. and Loan Ass'n v. Home Federal Sav. and Loan Ass'n, 721 F. Supp. 940, 945 (W.D. Tenn. 1989). "While this covenant [of good faith and fair dealing] does not create new contractual rights or obligations, it protects the parties' reasonable expectations and their right to receive the benefits of the agreement they entered into." Lopez v. Taylor, 195 S.W.3d 627, 633 (Tenn. Ct. App. 2005). Here, Plaintiff's allegations to support its fourth cause of action relate to Defendant's conduct that is well-outside the scope of any contractual agreement. Other than the Lease Agreement, Plaintiff does not allege the existence of any other agreement or contract between the parties. Without a contract or agreement imposing a duty on Defendant to not compete with

Plaintiff or engage in similar business operations, Plaintiff cannot prevail on its claim for breach of covenant of good faith and fair dealing.

E.    Fraudulent Misrepresentation

Turning to the fifth count, Defendant contends it should be dismissed because Plaintiff could not have reasonably relied on Defendant's alleged misrepresentations, and those alleged misrepresentations did not relate to existing or past facts.

> In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367, 371 (Tenn. Ct. App. 2006) (quoting Metro. Gov't of Nashville and Davidson County v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App.1992)). Defendant contends Plaintiff's allegation that Defendant stated it "would no longer engage in" certain conduct (such as the hiring of Plaintiff's employees) is insufficient to state a claim for fraudulent misrepresentation.  Defendant argues this allegation refers to a statement concerning *future* performance and therefore does not satisfy the first requirement that the defendant made a "representation of an *existing or past fact*." Id. (emphasis added).

Without expressly conceding that the Complaint fails to allege Defendant represented an "existing or past fact," Plaintiff argues that the Complaint sets forth facts showing Defendant promised  future action but without any present intention to fulfill the promise.  This, according to Plaintiff, is sufficient to allege a cause of action for promissory fraud.  Tennessee law does not necessarily treat fraudulent misrepresentation and promissory fraud as two separate causes of action,

but instead, permits a cause of action for "fraud" based on whether the promise related to an existing or past fact (fraudulent misrepresentation) or a promise of future action (promissory fraud). See Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (noting that intentional misrepresentation and promissory fraud are not necessarily two distinct causes of action, but "it is more correct to think of intentional misrepresentation as a necessary element of a fraud claim, while promissory fraud is a type of fraud perpetrated by means of a false promise of future action.").

Here, the parties agree that the promise alleged in the Complaint referenced future action by Defendant. Thus, the inquiry turns to whether the Complaint contains sufficient allegations such that a claim for promissory fraud is plausible.

The required elements for a claim of promissory fraud are as follows:

(1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity-that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

Id. (quoting Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App.1990)). It appears to the Court that the Complaint alleges facts sufficient to satisfy the first two elements and the fourth element in paragraphs nineteen (19) through twenty-eight (28), as well as paragraphs sixty-seven (67) through sixty-nine (69). As to the third element, Defendant argues Plaintiff cannot demonstrate that it justifiably or reasonably relied on Defendant's representations, as an exposed competitor, that it would no longer hire Plaintiff's employees or seek business from Plaintiff's clients. To agree with this argument would require the Court to disbelieve the allegations in the Complaint, specifically the

allegation that Plaintiff reasonably relied on the representations by Defendant's chief operating officer. This the Court cannot do under well-settled precedent. Hishon, 467 U.S. at 72 (noting that at motion to dismiss stage, the Court "must accept [the Complaint's] allegations as true"). Moreover, whether Plaintiff did in fact rely on these statements and whether such reliance was reasonable are questions of fact inappropriate for a motion to dismiss. See City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996) (recognizing that the reasonableness of a plaintiff's reliance on an alleged misrepresentation is generally a question of fact inappropriate for summary judgment) (citations omitted). Therefore, the Complaint contains allegations setting forth a plausible cause of action for fraud, specifically promissory fraud.

F.    Negligent Misrepresentation

"In order to prevail in a suit for negligent misrepresentation, the plaintiffs must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." Ingram, 215 S.W.3d at 371 (quoting Williams v. Berube & Assocs., 26 S.W.3d 640, 644-45 (Tenn. Ct. App. 2000)). Similar to its argument regarding dismissal of the fraudulent misrepresentation claim, Defendant argues the Complaint fails to sufficiently allege reasonable reliance. For the reasons stated above and because a determination of reasonableness is not appropriate at this stage in litigation, the Court disagrees. Plaintiff has made the requisite showing in order for this cause of action to survive Defendant's motion to dismiss.

G.    Declaratory Judgment, Indemnification of Losses, and Payment of Attorneys' Fees

Defendant argues Plaintiff's final three claims for relief fail because Plaintiff's other claims fail. As explained above, several claims survive the motion to dismiss. Nevertheless, these last three claims are dependant upon a favorable ruling on the claims for breach of contract, breach of covenant of quiet enjoyment, and breach of covenant of good faith and fair dealing. These causes of action have been dismissed. Accordingly, Plaintiff's claims for declaratory judgment, indemnification of losses, and payment of attorneys' fees must also be dismissed.

## IV.  Conclusion

In sum, Plaintiff's claims for breach of contract, breach of implied covenant of quiet enjoyment, and breach of covenant of good faith and fair dealing are dismissed. The related causes of action for declaratory judgment, indemnification, and attorneys' fees are also dismissed. On the other hand, Plaintiff has stated facts sufficient to allege a plausible claim for tortious interference with business relations, fraudulent misrepresentation, and negligent misrepresentation.

IT IS, THEREFORE, ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 6) is DENIED. Defendant's alternative Motion to Transfer Venue (also Doc. No. 6) is DENIED. Defendant's Motion to Dismiss the Complaint for Failure to State a Claim (Doc. No. 15) is GRANTED IN PART and DENIED IN PART.

IS IT FURTHER ORDERED that the parties shall confer as provided by Rule 26(f) and conduct an Initial Attorneys' Conference ("IAC") within ten (10) calendar days from the date of this Order. Within three (3) calendar days after the IAC, the parties shall file a Certification of Initial Attorneys' Conference and a joint proposed discovery plan conforming to the requirements in this Court's Standing Orders (3:07-mc-47). The deadlines set forth herein shall control over those stated

in section 4(a)-(c) of the Initial Scheduling Order (3:07-mc-47, Doc. No. 2).  All other deadlines set forth in the Initial Scheduling Order shall remain in effect.

IT IS SO ORDERED.

Signed: February 13, 2008

Frank D. Whitney
United States District Judge